2, 2, 2, 0, Yao, Lopez, Polo v. Jefferson Sessions. Good morning Mr. Pomelo. Good morning Your Honor. Your Honors as well, may it please this Honorable Court, Attorney Todd Pomelo here today on behalf of Mr. Yao, Lopez, Polo. May I please reserve one minute for rebuttal? You may. This is a first impression issue, not unlike the first case heard this morning dealing with Massachusetts assault battery by means of a dangerous weapon. And for the reasons I'm going to argue today as well as those in our brief and that of Amiti Pirae, the Board of Immigration Appeals got this categorically wrong because they did not properly apply categorical analysis to the statute. There are numerous ways in which... I'm sorry, I thought your argument was that the categorical analysis was correctly applied except that the BIA categorized the Massachusetts case law under ABDW inappropriately, that they were mistaken in how they characterized it. So you best go back and tell me why you think the categorical approach was improperly applied. It was not properly applied, Your Honor, because for example, the leading cases here, Moncrieff from the U.S. Supreme Court, you have the camp. Those cases aren't even cited by the BIA. They're not even cited in the government's brief, responsive brief, in this case. And if those cases are faithfully applied to the analysis of the assault battery dangerous weapon, which is the proper way to do a categorical analysis, ABDW can be committed in a reckless and also in an intentional manner. I don't like my brother who appeared before you earlier today. He gave numerous examples of ways in which in the ACC context that you can be convicted of recklessness that doesn't rise to the standard. I actually think this is a case where the details matter a lot. We and the government has behaved remarkably responsibly, asking us to send this case back to the BIA, what, four times? There were now four decisions. And each time we tried to refine the question. And the last time we sent it back, it had to do with whether categorically, including both reckless and intentional ABDW, including both, whether the BIA was going to stick to its position that this was a crime involving moral turpitude. They answered that question and they said, yes, in our view, applying an analysis of Massachusetts law, we think both prongs are categorically a crime of violence. So I had understood you to say, well, they got Massachusetts law wrong, but not to argue that the categorical analysis had not been used here. So I'm a bit befuddled here. I apologize for confusing Your Honor. It may be my problem. But the categorical analysis requires looking at the elements of the crime. And the elements of the crime of ABDW, you can commit it in an intentional manner. You can also commit it in a reckless manner. But some of the ways in which you can commit that crime, the least of the acts, are not morally turpitudinous under the law. For example, the Wileski case, those are cited in our brief. The BIA looks to the Wileski case in holding that reckless ABDW is categorically a CIMT, but that case in and of itself is the case about the, quote, stupid and heedless person. So that's conduct that is beneath the federal statute that is still prescribed under Massachusetts law. You can be convicted, for example, of the people that were drunk that had the building burning down and left and firefighters died. There's a whole assortment of conduct in the ABDW statute. You can have an offensive touching with a dangerous weapon. The statute has slight touching you can be prosecuted for if it's done intentionally. And reckless conduct does not even require subjective intent to know what you're doing is reckless. So if the categorical analysis is faithfully applied, it's our view that it is not categorically a CIMT. What do you do with the most recent decision, matter of woe? Most recent decision, matter of woe, there was a 16th letter submitted last week by the government. That case is not entitled to any Chevron deference as outlined in our response, because that case was never considered by the BIA in applying its analysis toward Lopes-Squalo's case. What is the difference between the California statute applied there and the Massachusetts statute here? Do you argue there are material differences? There could be material differences. There could be. Well, for example, we've never briefed this issue. I'm not aware of all the different variations of California ABDW law. But that case, the Wu case, which I have read, does discuss how in California there is the reasonable person standard. But very much like Massachusetts. But you also have to have the conscious disregard of risk, which is unlike Massachusetts, where in Massachusetts the stupid or heedless person can also be prosecuted and put in prison for an ABDW they had no intention of committing. I'm suffering from some of the same confusion that Judge Lynch has expressed about exactly what you're arguing, because I had not understood you to argue that we need to reverse because they didn't cite Supreme Court cases or that they didn't bring to the table the proper methodological approach. What I understood you to be saying is that in using the admittedly proper approach, they made one of two mistakes. Either they improperly concluded as a matter of INA law that a reckless offense can be a crime of moral turpitude, or they erred in describing what the elements of the Massachusetts law are because they missed the point that you could have an unintentional negligent failure to perceive the risk. That's correct, Your Honor, because the least of the acts under either standard, the reckless or the intentional conduct, are not morally turpitude, is the argument to its core. Is it the latter you're arguing or both of those? Are you arguing recklessness isn't enough, period, or that the Massachusetts version of recklessness is not enough? The Massachusetts version of recklessness is not enough because it's broader than the federal version of recklessness. Then that brings us back to Woo, which I haven't heard you yet offer any distinction. In other words, I haven't heard you point in response to Judge Lynch's question to any material difference. Because otherwise we'd have, if you were right that they misdescribed the Massachusetts statute and we agreed with that, then what we'd probably do is remand to the BIA to get its view on whether the correctly characterized Massachusetts statute was a crime of moral turpitude. But I think the government is arguing we don't need to do that now because we've got Woo, which poses the question, is Woo any different? Essentially the government is asking this court to give Chevron deference to Woo, which was never even applied to Mr. Lopes-Quayle's case. No, no, no, no. The Chevron deference is a different question. They're saying, look, if you thought there was any ambiguity in this case, it's now resolved under the Woo decision and there's no point in remanding it. You say, gee, I haven't had the chance to argue this. But we've asked you, why isn't the Woo case controlling here? And thus far you haven't come up with an answer. And we don't go in for pointless remands to agencies which extend the time period that the alien is present in the U.S. when maybe the alien shouldn't be present in the U.S. Correct. Well, in the letter submitted by the government, they stated that Woo was entitled to Chevron deference. We don't agree with that point. Well, put that to one side, because I think there are two issues. The first is, do we know what the position of the BIA is on the correctly characterized Massachusetts statute? That's issue one. Issue two is, having known their position, will we give it deference? We're at issue one here. In your case, you would normally, I think, get a remand to have issue one addressed. What is their position? But what we're saying to you is, Woo seems to answer that question. Woo seems to now tell us what their position is. So there's no need to remand to find out the position. It's a whole separate issue of whether we then defer to that under Chevron. But that doesn't keep us from seeing Woo as eliminating your first argument. Permission to answer? I'm over the top. The issue, Woo is dealing with a California statute. So in order to determine whether the BIA would have applied Woo the same way as they did in Mr. Lopes-Quayle's case, you would need briefing and analysis of how the California statute may differ from the Massachusetts statute. One way in which I believe it differs is the Walensky case. That punishes the heedless man's actions as reckless, whereas Woo is citing a California statute that requires a subjective understanding and awareness of the risk to what you're doing as a substantial risk of bodily injury to another. And that is one key difference. But without further briefing, perhaps a remand would be appropriate, because it's hard to discern how the BIA would interpret California statute versus a Massachusetts statute in light of Woo. And Woo has never been fully briefed by either litigant in this case. Thank you. Thank you, counsel. Mr. O'Malley, good morning. May it please the Court, my name is Andrew O'Malley. I represent the Attorney General of the United States. Why don't you start with the Woo decision and what you're asking us to do and whether there are any material distinctions that would cause us to remand the case. Yes, Your Honor. Woo, the Chevron deference to Woo is the Chevron deference to Woo. No, no, please. Okay. That's question two. Let's go back to question one, as Judge Chaotic just said. Could you repeat? Sorry, could you? Question one is? Does Woo answer the question of what the position of the BIA is when confronted with a statute in which recklessness can be found where the person actually doesn't perceive the risk, but a reasonable person would perceive the risk? Yes, it does. It squarely states that it doesn't matter. The difference is negligible in terms of the definition of a crime involving moral turpitude, and that's what requires the Chevron deference is the Board's interpretation of what that term means, the crime involving moral turpitude. And I think it goes beyond simply the Board having a posted decision, published decision here, saying something that clarifies this, but the Board actually foreshadowed that reasoning in this decision. And I think the key to the Board's decision, the Board's September 7th decision here, is it's parenthetical, that knowing the facts that would cause a reasonable man to know the danger is equivalent to knowing the danger. That's Woo. And that's what they're saying in this case. They just simply didn't have the published decision to rely on at that point. And it's not an inaccurate description of Wolanski, which actually does use that language, that the BIA did not go on and use the heedless and stupid language. That's your argument. Well, the first statement, the first quote there in the Board's decision is admittedly, it's not correct. It's not even from Wolanski. It looks like it was pulled from something else. But I think if we get clarity there from that parenthetical is what the Board is saying, is that they're the same thing. We're looking at the same thing, even under Massachusetts law. Knowing the facts that would cause a reasonable person to believe and knowing that the danger is there, it's the same thing. And that's exactly what the Board held in Woo. So Woo does give us clarity here. So his argument is, well, gee, the decision actually on appeal to the Court of Appeals doesn't mention Woo. So even if I can't now tell you that there's any distinction, you ought to send it back and let the BIA do its own work. No, I disagree with that. I think we argued this in our brief, that that reasoning from the Board here, that parenthetical, that knowing the facts that would cause a reasonable man to know the danger, is equivalent to knowing the danger, that's what the Board is saying here. And that's enough under the reckless standard. And that's proper under Massachusetts law. And it's proper for us to consider this additional law in the case that we have here. I think it is. I think it's a clarification of this statement in this case from the Board. So you consider Woo to be a clarification? I think it makes clear what the Board was saying here. I think it's the same thing. And again, it is a clarification of the Board's interpretation of CIMT under the INA. And that's what gets Chevron different. That's correct, Your Honor. That's absolutely right. And the California statute at issue in Woo was substantially similar. It was any person who commits an assault upon another person with a deadly weapon or instrument, other than a firearm or by means of force, likely to produce great bodily injury. The great bodily injury, the deadly weapon versus dangerous weapon, are negligible differences here. It's really substantially the same statute. And here, this statute is traditionally what is considered to be a CIMT. The Board has long held that while assault and battery may not constitute a CIMT, generally assault and battery with aggravating factors like the use of a dangerous weapon is a CIMT. In fact, this statute was held to be such back in 1951. And nothing in the categorical analysis changes that determination. Well, it might have. Sorry? It might have. It might have. And I think the Board recognizes that in Silva-Trevino and recognizes that in matter of Woo even. This categorical analysis makes those decisions a little antiquated. But it still stands as an exemplar that this is the kind of conduct that we have traditionally considered to be a CIMT for immigration purposes. Let me ask you about that because when I hear the word moral, it's an immoral thing someone has done, which the EIA has equated with depravity. I usually don't think of negligent, unwitting conduct. If someone is stupid and heedless and doesn't even perceive a risk and goes around like that, you think of them as perhaps dangerous, but you don't think of them as immoral. Well, we're not talking about negligent conduct here. We're talking about reckless conduct. Under Massachusetts law, the perception of risk component of reckless conduct is negligent conduct. In other words, it says you're liable if a reasonable person would perceive the risk even if you don't. So how do you introduce morality into that? Well, there's still the intentional conduct there, which brings this up in two. Sure. So I intentionally engage in conduct, but I'm oblivious to the fact, which would be known by a reasonable person, that that conduct that I'm intentionally engaging in actually poses a substantial risk to people. And I think the morality gets to where the board has clarified that what we're talking about here is when you're getting away from things that are acceptable in civil society, and it's the stacking on top of the mens rea, the different elements that aggravate the crime, that gets you up into the range of crime involving moral turpitude. So it may be reckless conduct, but you add on top of that the use of an instrument in a deadly manner, or a dangerous manner, pardon me, or something that's per se dangerous, plus the resulting bodily injury, and that brings you up into the realm of a CIMT, moral turpitude. As the board said in Woo, the use of a deadly or dangerous weapon or instrument is conduct that magnifies the danger posed by the perpetrator and demonstrates his heightened propensity for violence and indifference to human life. These are the things that fall outside the bounds of what is acceptable in civil society, and that's what gets us to the crime involving moral turpitude. That seems to cover every crime. Well, it is a case-by-case determination. I know, but I mean, the definition of moral turpitude that is being used by your agency, what crime would not be covered? Well, I think the board has been very careful about negligent conduct. General assault and battery is typically not, has typically held to not be, but when we add in these aggravating factors, that brings us up into the range. So the board has been very careful about marking where it draws the line on these things, and you see that in the analysis with most assault and battery, with dangerous weapon cases, is that they say, look, assault and battery, generally no, but we've got problems here with the use of the dangerous weapon, the resulting bodily injury. That's where we get away from what's acceptable in civil society. And, again, the recklessness problem, I think Wu settles that, and I think the board's decision here is consistent with what was said in Wu. If there are no further questions. Thank you. Thank you. Just real briefly, Your Honor, Judge Kennedy brought up a question to my brother earlier about how this categorical analysis is applied by the BIA, and he said that the 1951 case, and I would respectfully submit that the analysis today is not much different than the 1951 analysis. The BIA seems to suggest that just because a dangerous weapon is used in conjunction with an assault and battery, that 265 Section 15B is always involving moral turpitude. But Your Honor mentioned numerous examples in which there is conduct from the heedless man, that would be under the reckless standard, there would not be morally turpitude in this, there is also offensive touchings, which the government can see as a simple assault and battery or can be done in an offensive manner, and that dealt with Johnson in other cases. So simple A and B's are not crimes involving moral turpitude because of the offensive component. You can also commit an assault and battery with a dangerous weapon offensively or heedlessly, and for those two main reasons we believe that this is not categorically a statute involving moral turpitude. We respectfully request that you reverse the decision of the Board of Immigration Appeals and remand Mr. Wilkes-Craylock to receive cancellation of removal for non-lawful permanent residence. Thank you. Thank you.